PD-1053-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/7/2015 4:50:59 PM
Accepted 10/8/2015 3:58:39 PM
ABEL ACOSTA
CLERK

No. PD-1053-15

_____

**IN THE COURT OF CRIMINAL APPEALS OF TEXAS**

_____

**Gerald Mac Lowrey**

v.

**The State of Texas**

_____

**ON DISCRETIONARY REVIEW FROM THE
COURT OF APPEALS FOR
SIXTH JUDICIAL DISTRICT OF TEXAS**

**CAUSE NUMBER 06-14-00172-CR**

**APPEALED FROM THE
SIXTH DISTRICT COURT
OF LAMAR COUNTY, TEXAS**

**CAUSE NUMBER 25492**

Gary L. Waite
State Bar No. 20667500
Gary L. Waite
104 Lamar Ave.
Paris, Texas 75460
(903) 785-0096
(903) 785-0097

garywaite@sbcglobal.net

FILED IN
COURT OF CRIMINAL APPEALS

October 8, 2015

ABEL ACOSTA, CLERK

ATTORNEY FOR PETITIONER

*List of Parties and Counsel*

The following is a list of all parties and all counsel who have appeared in this matter:

Trial Court Judge:   Will Biard

Appellant:   Gerald Mac Lowrey

Attorney for Appellant in the appellate court: Gary L. Waite, 104 Lamar Ave., Paris, TX 75460, State Bar No. 20667500

Attorney for Appellant at Trial: Diane Sprague, 9 W. Houston Street, Paris, Texas 75460

Appellee: The State of Texas

Attorney for Appellee in the appellate court: Gary D. Young, State Bar No. 00785298

Attorney for Appellee at trial: Lorrie Pollard, State Bar No. 00784774

Elected District and County Attorney: Gary D. Young

TABLE OF CONTENTS

*List of Parties*                                                     ii

*Table of Contents*                                                   iii

*Index of Authorities*                                                iv

STATEMENT REGARDING ORAL ARGUMENT                                     1

STATEMENT OF THE CASE                                                 1-2

STATEMENT OF PROCEDURAL HISTORY                                       2

GROUND FOR REVIEW:                                                    2

THE COURT OF APPEALS ERRED IN HOLDING THAT THE
 TRIAL COURT DID NOT ABUSE IT'S DISCRETION IN
 REFUSING TOISSUE A WRIT OF ATTACHMENT FOR
 A DEFENSE WITNESS.

ARGUMENT                                                              3-9

  (a) Background                                                      3-5

  (b) Argument and Authority                                         5-9

PRAYER                                                                10

CERTIFICATE OF SERVICE                                                11

CERTIFICATE OF COMPLIANCE                                             12

APPENDIX:     The opinion of the court of appeals.

INDEX OF AUTHORITIES

*Bland v. State*, 211 S.W.2d 751 (Crim. App. 1948)      7

*Burk v. State*, 876 S.W. 2d 877, 904 (Tex. Crim. App. 1994)      6

*Erwin v. State*, 729 S.W. 2d 709, 714 (Tex. Crim. App. 1987)      6

*Sturgeon v. State*, 106 S.W. 3d 81, 90 (Tex Crim. App. 2003)      5-6,7

*Trinidad v. State*, 949 S.W. 2d 22, 24 (Tex. App.–Houston [1st Dist.] 1992, pet. Ref'd)      7

*United States v. Simpson*, 992 F.2d 1224, 1230 (D.C. Cir. 1993)      9

*Washington v. Texas*, 388 U.S. 14 (1967)      9

Tex. Code Crim. Proc. Ann. Art 24.12      3, 5-6

Tex. R. App. P. 44.2 (a)      7

Tex. R. App. P. 66.3 ( c)      7

Tex. R. App. P. 66.3 ( d)      7

**TO THE COURT OF CRIMINAL APPEALS**

**OF THE STATE OF TEXAS**

**GERALD MAC LOWREY, PETITIONER**

**v.**

**THE STATE OF TEXAS,  RESPONDENT**

**APPELLANTS PETITION FOR DISCRETIONARY REVIEW**

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the Petitioner, Gerald Mac Lowrey, and respectfully urges this Court to grant his Petition for Discretionary Review of the above styled cause, pursuant to the rules of the Court

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral argument would assist the Court in explication and disposition of the issues presented in this petition, and presents unique and interesting issues.  Therefore, Petitioner respectfully requests oral argument.

## STATEMENT OF THE CASE

This is an appeal from the trial court's final judgment and conviction for theft (CR, pp. 95-96)

In October, 2013, a grand jury in Lamar County, Texas indicted Petitioner on two counts of theft.  A jury found Petitioner guilty of the offense of theft of

Material-aluminum/copper/bronze/brass with a value of less than $20,000.00 as charged in count two of the indictment (RR, vol. 4, p. 97; Supp CR, p. 8).

The trial court assessed punishment and sentenced Lowrey to two years confinement in a state jail facility, and probated that sentence for five years of community supervision (RR, vol 4, pp. 125-126). The trial court also assessed a fine of $1,000.00 (probated), court costs of $343.00 and restitution to be determined (CR, p. 95).

Petitioner timely filed his notice of appeal (CR, p. 94). The Court of Appeals affirmed his conviction on July 14, 2015. Petitioner filed a Motion for Extension of Time to File the Petition for Discretionary Review. Petitioner's Petition for Discretionary Review is due on or before October 12, 2015.

## STATEMENT OF PROCEDURAL HISTORY

(1)Date of opinion from Court of Appeals:      July 14, 2015

(2)Date of Motion for Rehearing:      N/A

**GROUND FOR REVIEW**

THE COURT OF APPEALS ERRED IN HOLDING THAT THE TRIAL COURT DID NOT ABUSE IT'S DISCRETION IN REFUSING TO ISSUE A WRIT OF ATTACHMENT FOR A DEFENSE WITNESS.

**ARGUMENT**

Review is warranted under Tex. R. App. P. 66.3 ( c) because the opinion below conflicts with an opinion of the United State's Supreme Court and this Court's opinion that attachment of a witness who has been served with a subpoena is a matter of right.  See *Washington v. Texas*, 388 U.S. 14 (1967); *Sturgeon v. State*, 106 S.W.3d 81, 90 (Tex. Crim. App. 2003).

Review is warranted under Tex. R. App. P. 66.3 (d) the opinion below because it has misconstrued a statute.  Tex. Code Crim. Proc. Ann. Art. 24.12.

*(a) Background.*

Petitioner was a truck driver for Joe Tex Xpress, Inc. (Joe Tex).  On or about May 1, 2014, Petitioner transported a load of crates containing copper bars from Hussey Copper in Kentucky to Schneider Electric and Eaton Electric in El Paso, Texas. On the way to El Paso, Texas, Petitioner stopped in Paris, Texas to visit with his daughter-in-law (RR, vol 3, pp. 213-214).

Upon his arrival at Schnieder Electric, Petitioner and a Schnieder Electric employee, Raul Bueno,  discovered that a crate had been tampered with and was missing copper.  Petitioner and Bueno inspected the load and determined that no other copper was missing from the load. ( See RR, vol 3, pp 227-229). After making the discovery, Petitioner contacted his dispatcher to report his load was

3

"shorted." (RR, vol. 3, pp. 224-225). After receiving this information from the dispatcher, Angela Dunavant, chief financial officer for Joe Tex contacted Petitioner to discuss the situation (RR. Vol 3, 9.123). About May 2, 2013, Hussey Copper notified Dunavant that when Petitioner arrived at Schnieder Electric, one of the crates it received had been opened and was missing copper bars.

On May 4, 2013, Petitioner reported to Keith Draper, a Lamar County Sheriff's deputy, that someone had stolen forty one sticks of flat copper tubing from his load. All of the copper bars stolen were 4 inches wide and 12 feet long (RR, Vol. 3 , p. 47). While discussing the theft, Petitioner indicated that he had borrowed his daughter-in-law's truck and had gone to Paris Iron and Metal to sell some scrap (RR, vol 3, p. 26).

After taking the report, Draper turned this information over to Joel Chipman, an investigator for the Lamar County Sheriff's office. Chipman went to Paris Iron and Metal and was informed that approximately twelve bars, at least five of which were four-inch wide bars had been sold by Petitioner (RR, vol 3, p. 53, RR, vol 5, State's Exhibits 2-7). The other bars sold by Petitioner were not four-inch wide bars, and did not conform to the bars reported stolen (RR, vol. 3, pp. 77-78; 79).

Petitioner testified at trial that he bought the copper that he sold to Paris

4

Iron and Metal from a truck driver at a truck stop in Kentucky (RR, vol. 3, pp. 209- 210).

At trial, Angela Dunavant testified that in addition to the crates of four-inch-wide copper bars, Petitioner's load contained crates (that were very easy to open and close) of copper bars of other widths.  (RR, vol 3, pp. 128-130; 132; State's Exhibit 12; see Slip op. p. 8).

Petitioner subpoenaed Raul Bueno, the Schnieder Electric employee who inspected the load, and would have testified that all of the missing  copper was from one crate, and that all the missing copper  was four inch wide copper, and that there were no other crates that were open, and  no other copper was missing from other crates.  Bueno failed to show up for trial, and Petitioner requested a writ of attachment for the witness, which was denied by the trial court.(RR, vol. 3, pp. 136-137; pp. 138-139; CR, p. 80).

*(b)  Argument and Authority*

When a witness who has been duly subpoenaed fails to appear, the State or the defendant shall be entitled to have an attachment issued forthwith for such witness.  TEX. CODE CRIM. PROC. ANN. Art 24.12; *Sturgeon v. State*, 106 S.W. 3d 81, 90 (Tex Crim. App. 2003) stating that Article 24.12's plain language "makes it clear that attachment of a witness who has been duly served with a

5

subpoena is a matter of right.   This Court has established a three step procedure for determining whether preserved error after a subpoenaed witness fails to appear. First, the partymust request a writ of attachment from the trial court.  Second, the party must show what the witness' testimony would have been had the witness testified.  Finally, it must be shown in the request that "the testimony the witness would have given is relevant and material." *Sturgeon*, 106 S.W.3d at 85 (citing *Erwin v. State*, 729 S.W. 2d 709, 714 (Tex. Crim. App. 1987), overruled on other grounds by *Burk v. State*, 876 S.W. 2d 877, 904 (Tex. Crim. App. 1994).  (Slip op. pp. 6-7).

Petitioner did all that he was required to do.  He subpoenaed the witness. When the witness (through his lawyer), refused to honor the subpoena, Petitioner requested a writ of attachment.   He showed the trial court that the testimony of the witness was relevant and material.  Dunavant, the Joe Tex representative,  testified that  other crates in the truck contained  copper other than four inch wide bars.  She testified the  crates on the truck  were easily opened and closed.   This gave the impression  that the other widths of copper sold by Petitioner came from other boxes on the truck, and therefore, the stolen four-inch-wide copper had to have come from this load.  This inference would have been rebutted by the witness, Raul Bueno, who would have testified that he inspected the load, and that none of the

6

other boxes were "short." This testimony is certainly relevant and material. Dunavant's testimony that she had not received notification from Schneider Electric that other boxes had been opened was certainly not the same as direct testimony from Bueno, a Schneider Electric employee, that no other boxes were open and nothing else was missing from the load.

Should the party requesting the attachment meet all three requirements, "reversible error will result unless the error made no contribution to the conviction or to the punishment." *Sturgeon* at 85; see also Tex. R. App. P. 44.2 (a).

The Court below does not address Petitioner's argument that Bueno was the only disinterested witness who could testify to the fact that nothing else was missing from the load. *Bland v. State*, 211 S.W.2d 751 (Crim. App. 1948; see also *Trinidad v. State*, 949 S.W. 2d 22, 24 (Tex. App.–Houston [1st Dist.] 1992, pet. Ref'd), holding that harm was shown because the two witnesses subpoenaed were disinterested and therefore their testimony had more credibility than that actually presented.

The Court's below omits that the State argued in it's closing argument that there was copper other than the four inch copper on the truck, effectively arguing that the other copper could have come from other crates from this load. After the State rested it's case, Petitioner made a request for a directed verdict. Petitioner

7

argued that there were other (RR, pp. 201-203).  Petitioner correctly asserted that the State intended to argue as its theory that Petitioner had stolen copper from other loads or possibly had taken copper from other shipments or from other boxes in this shipment and sold it at Paris Iron and Metal (RR, p. 202, p. 206).  There was no evidence that copper was taken from other loads.

The trial Court, after argument of counsel on Petitioner's Motion for a Directed Verdict,  entered a limine order that the state could not argue during it's closing that Petitioner removed other widths of copper from other crates (RR, p.206).  However, over objection, (RR, vol. 4, p.91), the State argued in it's closing:

". . .This is the defense's photo of the–taken of the box that was opened in El Paso.  Look at the top.  It's cardboard.  Remember when the Defendant testified, he made a statement.  I missed it the first time.  Almost in the first few minutes that he talked about cardboard on these crates.  These things aren't nailed shut.  I would submit to you that those crates are pretty easy to get into." (RR, vol. 4,  pp. 91-92) . . .

Now was anything else reported missing?  No.   There's no evidence of that. Remember what the shipping guy said, Mr. Skidmore, the Joe Tex employee, what are the chances that 12 bars out of 45,000 pounds on that truck, 43, whatever it is on State's 14, what are the chances those 12 bars are going to catch all of them (sic).  Do you really think that they caught some of those other boxes were light." (sic) (RR, vol 4, p. 92).

The whole point of having Raul Bueno come to court was his testimony that *nothing* else was missing from the load except the four inch bars from  one crate.

8

It cannot be said that the witness testimony was not relevant and material-- and without Bueno's testimony, Petitioner was denied his defense. The opinion from the Court below negatively impacts the very nature of a defendant's right to compulsory process. *United States v. Simpson*, 992 F.2d 1224, 1230 (D.C. Cir. 1993). In *Simpson*, the D.C. Circuit Court held that the defendant was denied his right to compulsory process when the judge refused to issue a bench warrant for a subpoenaed witness who would have testified that nothing fell from defendant's pocket while he was being frisked. The *Simpson* Court held that in assessing a request for compulsory process, a trial judge may not invade the province of the jury and independently weigh the probativeness of relevant evidence. Once the defendant has alleged facts that, if true, demonstrate the necessity of the witness' testimony, the court is obligated to lend its authority in compelling the sought-after witness' appearance. See generally, *Washington v. Texas*, 388 U.S. 14 (1967). To reiterate, the jury, given that there was copper bars of different sizes than reported stolen, possessed by Petitioner, could have concluded that the copper sold was not the same copper as that reported stolen from his truck. The Court of Appeals applied the wrong legal standard and thus reached the wrong result in this case, and will likely do it again without the guidance of this Court.

9

*Prayer*

Petitioner prays this Honorable Court grant his Petition for Discretionary Review, and after briefing on the merits, that the case be set for submission to this Court , and after submission, the Court reverse the decision of the Court of Appeals.

Respectfully submitted,

Gary L. Waite
104 Lamar Ave.
Paris, Texas 75460
(903) 785-0096
(903) 785-0097

garywaite@sbcglobal.net

By:/s/Gary L. Waite
    Gary L. Waite
    State Bar No. 20667500
    Attorney for Petitioner

## Certificate of Service

I certify that a true copy of this Petition for Discretionary Review was served in accordance with rule 9.5 of the Texas Rules of Appellate Procedure on each party or that party's lead counsel as follows:

Party: Lamar County Attorney

Lead attorney: Gary Young

Address of service: 119 N. Main St., Paris, Texas 75460

Method of service:  in person

Date of service: October 7, 2015


Party: State Prosecuting Attorney

Address of service: P.O. Box 13046, Austin, Texas 78711-3046

Method of service: by mail

Date of service: October 7, 2015


/s/Gary L. Waite
Gary L. Waite
Attorney for Petitioner


11

## CERTIFICATE OF COMPLIANCE

I certify that this Petition conforms to the requirements of TRAP 9, and consists of 1,780 words per TRAP 4(I) (2) (D).

/s/ Gary L. Waite
Gary L. Waite

**Appendix** :

The opinion of the court of appeals.



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00172-CR

_____


GERALD MAC LOWREY, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 25492


Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

OPINION

A jury found Gerald Mac Lowrey guilty of theft of material (aluminum, copper, bronze, or brass) in an amount valued at less than $20,000.00.[1] Following the jury's verdict of guilty, the trial court assessed Lowrey's punishment and sentenced him to two years' confinement in the State Jail Division of the Texas Department of Criminal Justice, but probated the sentence and placed Lowrey on community supervision for five years.

On appeal, Lowrey contends (1) that the trial court erred when it refused to issue a writ of attachment for a defense witness, (2) that the trial court erred when it denied Lowrey's motion for continuance, and (3) that there was insufficient evidence to prove the identity of the victim as alleged in the indictment, or in the alternative, that there was a material and fatal variance between the victim's name as alleged in the indictment and the name proved at trial.

For the reasons below, we find that the trial court did not abuse its discretion when it denied Lowrey's request for a writ of attachment or his motion for a continuance and that the evidence was sufficient for the jury to find Lowrey guilty of the offense of theft of material valued at less than $20,000.00. Accordingly, we affirm the trial court's judgment.

I.      **Background**

Joe Tex Express[2] is a Texas company located in Mount Vernon, Texas, which is engaged in the business of shipping metals, machinery, lumber, building materials, railroad materials, and

---

[1]The State originally indicted Lowrey for two counts of theft. Prior to trial, the State abandoned count one of the indictment, and it was dismissed by the trial court on August 1, 2014.

[2]The actual name is Joe Tex Xpress, Inc. The parties refer to the company as "Joe Tex Express," "Joe Tex," and "Joe Tex Xpress." For purposes of this opinion, we will refer to the company as "Joe Tex Express."

various other things. Lowrey was an owner-operator working under contract with Joe Tex Express from 2010 until 2013, at which time the company terminated his employment.[3] On or about May 1, 2013, Lowrey transported a load of crates containing copper bars from Hussey Copper in Kentucky to Schneider Electric and Eaton Electric in El Paso, Texas. During the delivery, Joe Tex Express assumed the responsibility of "taking care of the copper." Although Lowrey had the permission of Joe Tex Express to assume control over the shipment in order to haul it, he did not have the company's permission to dispose of any part of the shipment or to sell it for his own use.

Upon his arrival at Schneider Electric, Lowrey and a Schneider Electric employee discovered that a crate had been tampered with and was missing some copper. After making the discovery, Lowrey contacted a Joe Tex Express dispatcher to say his load had been "shorted."[4] Presumably after receiving the information from the dispatcher, the chief financial officer for Joe Tex Express, Angela Dunavant, contacted Lowrey to discuss the situation. About May 2, 2013, Hussey Copper notified Dunavant that when Lowrey arrived at Schneider Electric, one of the crates it received had been opened and was missing copper bars.

On May 4, 2013, Lowrey reported to Deputy Keith Draper, who worked for the Lamar County Sheriff's Office, that someone had stolen "[f]orty-one sticks" of flat copper tubing from his load. While he was discussing the theft with Draper, Lowrey indicated that he had previously borrowed his daughter-in-law's truck and had gone to Paris Iron and Metal to sell some "scrap."

---

[3]Joe Tex Express terminated Lowrey's employment due to the events leading up to his arrest.

[4]It is unclear from the record exactly when Lowrey contacted the dispatcher.

After taking the report from Lowrey, Draper contacted Joel Chipman, an investigator for the Criminal Investigation Division (CID) of the Lamar County Sheriff's Office. When Chipman began his investigation of the theft, he reviewed Draper's report and found that Lowrey had described the stolen property as "copper bars being about a quarter inch thick, four-inches wide and twelve feet long" with a silver-colored coating believed to be aluminum. On May 15, 2013, Chipman went to Paris Iron and Metal and asked if they had received any copper bars. In response to his inquiry, he was told, "I know exactly what you're talking about." Chipman reported that the officials at Paris Iron and Metal revealed that it had received approximately twelve such bars, at least five of which were four-inch wide bars and looked like "they were kept very well" and had "no significant marring." Chipman took photographs of the copper and obtained the receipt that had been issued to Lowrey on May 1, 2013, showing that Lowrey had received $1,896.00 for "790 pounds of number two copper," at $2.40 per pound. Chipman also obtained a photograph of Lowrey that was taken at Paris Iron and Metal on the day he sold the copper to the business. In the photograph, Lowrey was standing next to "some metal."

Soon afterwards, Chipman interviewed Lowrey and "asked him about the scrap" he had sold to Paris Iron and Metal. Lowrey explained to Chipman that he had a relative who worked for the telephone company and who had given Lowrey approximately 400 pounds of copper in the form of "old wire and scraps to sell." Chipman showed Lowrey the photograph he had gotten from Paris Iron and Metal. When Chipman inquired as to why there was no "old wire" shown in the photograph, Lowrey responded, "[W]ell, they didn't take a picture of it." Chipman replied,

4

"Nobody is going to believe that's scrap. Why are you -- why are you -- you're trying to pass this off as scrap when it's the exact same stuff that you reported stolen."

Chipman also showed Lowrey the copy of the sales receipt he had gotten from Paris Iron and Metal, reflecting the sale of 790 pounds of copper. Chipman then questioned Lowrey about the difference in the amount of copper shown on the sales receipt and the fact that Lowrey had given him an explanation for where he had gotten only 400 pounds of copper and scraps.[5] Lowrey explained to Chipman that he had also purchased copper "scraps" and extra bars from another truck driver in Kentucky who "wasn't supposed to have any copper on his truck." Lowrey informed Chipman that he did not know the identity of that truck driver or the truck driver's employer. Lowrey stated that he paid the other truck driver $200.00 for "seven or eight sticks" of copper. Lowrey also told Chipman that some of the scraps came from underground cable from a mobile home.

During his interview with Lowrey, Chipman also learned that Chad Lester and Chris Woodall accompanied Lowrey to Paris Iron and Metal. After they left the business, the three men picked up Lacrisha Lowrey (also called Lacrisha Woodall) and went to the casino in Grant, Oklahoma. At this point, Chipman made the determination that Lowrey was not a victim, but a suspect.

---

[5]Eventually, Lowrey said that he had defrauded Paris Iron and Metal when he represented that he was selling them a larger amount of metal, by approximately 110 pounds, than he actually sold them.

5

## II. Lowrey's Grounds of Error

### A. Whether the Trial Court Erred When it Refused to Issue a Writ of Attachment

Lowrey contends that the trial court erred when it denied his request for a writ of attachment for Raul Bueno, who was an employee of Schneider Electric. An accused is guaranteed, under both the United States and Texas Constitutions, the right to compulsory process to compel the attendance of a witness at trial. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The Texas Code of Criminal Procedure, however, requires a defendant to file an application for a subpoena with the trial court's clerk if the defendant wants to ensure the witness' presence. TEX. CODE CRIM. PROC. ANN. art. 24.03 (West 2009). The defendant must then cause the subpoena to be properly served on the witness. *Ford v. State*, 14 S.W.3d 382, 391–92 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

When a witness who has been duly subpoenaed fails to appear, the State or the defendant shall be entitled to have an attachment issued forthwith for such witness. TEX. CODE CRIM. PROC. ANN. art. 24.12 (West 2009); *Sturgeon v. State*, 106 S.W.3d 81, 90 (Tex. Crim. App. 2003) (stating that Article 24.12's plain language "makes it clear that attachment of a witness who has been duly served with a subpoena *is a matter of right*"). The Texas Court of Criminal Appeals has established a three-step procedure for determining whether an appellant has preserved error after a subpoenaed witness fails to appear. First, the party must request a writ of attachment from the trial court. Second, in making the request, the party must show what the witness' testimony would have been had the witness testified. Finally, it must be shown in the request that "the testimony that the witness would have given [is] relevant and material." *Sturgeon*, 106 S.W.3d at 85 (citing *Erwin*

6

*v. State*, 729 S.W.2d 709, 714 (Tex. Crim. App. 1987), *overruled on other grounds by Burk v. State*, 876 S.W.2d 877, 904 (Tex. Crim. App. 1994).

Should the party requesting the attachment meet all three requirements, "reversible error will result unless the error made no contribution to the conviction or to the punishment." *Id.*; *see also* TEX. R. APP. P. 44.2(a). When "the testimony of the missing witnesses [is] neither cumulative nor irrelevant," the denial of the right to attach that witness is, in effect, the denial of the right to present a defense. *Sturgeon*, 106 S.W.3d at 89. We review the trial court's decision to deny the writ of attachment using the abuse of discretion standard. *Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.—Fort Worth 2006, pet. ref'd).

In this case, when Lowrey made the delivery of copper to Schneider Electric and it was discovered that one crate had been tampered with, Lowrey and Bueno inspected the remaining crates to make sure there was no other missing copper. On July 29, 2014, Lowrey subpoenaed Bueno to testify about the inspection in order to show that only one crate was missing copper and that all of the missing copper was four inches wide.

The trial began August 4, 2014. Following voir dire, and after receiving no response from Bueno, Lowrey asked for a writ of attachment to ensure his appearance at trial. Although Lowrey explained that he believed Bueno's testimony was material to his defense, the trial court denied his request "at this time." The trial court instructed Lowrey to speak to Bueno to determine the content of his testimony and informed Lowrey that he would consider his request for a writ of attachment once more the following day. Later that day, Lowrey received information that Bueno had agreed to appear in court.

7

The next day, the State called Dunavant as a witness. Among other things, Dunavant testified that in addition to the crates of four-inch-wide copper bars, Lowrey's load contained crates (that were very easy to open and close) of copper bars of other widths. Following her direct examination, the trial court called a recess and allowed the jury to leave for lunch. During the break, Lowrey informed the trial court that he had just received an email from Bueno's attorney stating that Bueno would not honor the subpoena. Lowrey again emphasized the necessity of Bueno's appearance, "particularly in light of testimony that [the State] elicited from [Dunavant] that create[d] the inference that there were other boxes opened on this shipment that were not reported and that -- what accounts for the nonconforming copper that show[ed] up in the pictures at Paris Iron and Metal would be from the boxes that were opened."[6] Lowrey argued,

> What happened here is a Class A illustration of what amounts to an evidentiary harpoon. This evidence about the possibility, the inference, the suggestion that there were other open crates and other missing copper to account for the nonconforming copper that we see in the pictures, the not four-inches wide and 144-inches long . . . .
>
> . . . .
>
> Nonetheless, [the State] consciously elicited that inference and that suspicion on direct examination. There's no way to defend that other than to bring Mr. Bueno in here to say that that didn't happen. We looked. There was nothing else missing.

The trial court denied Lowrey's request for a writ of attachment for Bueno.[7]

---

[6]The photographs contained various sizes of copper bars, including, but not limited to, copper bars that were four inches in width.

[7]Prior to the trial court's denial of Lowrey's request, the State considered entering into a stipulation with him regarding Bueno's testimony. In doing so, the State informed the trial court,

> I was about to say I understood Ms. Dunavant to say that the only box opened was the one that was reported with the four-inch strips. But if [Lowrey's trial counsel] will write out what [Lowrey]

8

Upon completion of the State's case, Lowrey asked for—and was denied—a directed verdict. Lowrey further requested the trial court to reconsider its denial of the request for an attachment of Bueno. Although the trial court listened to Lowrey's reasoning once again, it refused the request on the basis that it was not warranted.

In this case, Lowrey repeatedly requested an attachment for Bueno and was denied each time. Accordingly, he complied with the initial requirement for preservation of his complaint. *See Erwin*, 729 S.W.2d at 714. Next, Lowrey was required to provide the trial court with the substance of Bueno's testimony. *See id.* The State argues that Lowrey failed to provide the trial court with "sworn evidence or agreed facts" as to what Bueno's testimony would be, but instead offered only his "belief" of what it might be. Although Lowrey did not produce any written request, he did articulate what he believed Bueno's testimony would be, and the reason he felt it would be material to his defense.

In addition to Lowrey's summary of Bueno's testimony above, when Lowrey asked the trial court to reconsider its denial of his request for a writ of attachment, Lowrey explained again the reasons he believed Bueno's presence was necessary:

> We continue to request the Court to reconsider having Mr. Bueno brought here. In light of this last testimony from yet another witness, Mr. Skidmore, about how possible it is that these crates could have shaken loose and Mr. Lowrey could have gotten into other crates to take other copper that didn't match the copper that Schneider reported was the only one open, the State continues to urge this theory that other copper -- other crates undetected by Schneider Electric were broken into, a stick here, a stick there was taken out, too minimal amounts to be discerned by Schneider Electric and that was how -- the State would argue that the [j]ury should explain that there was non[-]conforming copper found here.

would have [Bueno] testify to, I can -- if he'll write it out, I can see if I can stipulate to it to avoid the need of a writ for somebody in El Paso.

9

The only people that can testify that that's not true, the only people that can testify, look, we were on alert, we looked in the other boxes, we looked. There was no other copper missing. That's this guy that I have subpoenaed timely and filed a return for.

. . . . . The person that is best situated to testify that that didn't happen, that they looked in all the boxes because they were on alert, that one box had been broken into, is this witness.

. . . .

I talked to him. I know that's what he would say. But I can't tell the jury that. They need to hear it. Because they've got the documents that the [c]ourt is saying are going to substitute for this testimony, and that is . . . the only thing that was missing was in that crate.

The trial court denied Lowrey's second request for an attachment.[8]

It is unnecessary for this Court to determine whether Lowrey adequately provided the trial court with Bueno's intended testimony. Even assuming that he did, we find that Bueno's testimony would have been cumulative and, as such, was not materially relevant to Lowrey's defense. Lowrey's contention is (1) that Dunavant's testimony created an "implication" that there were other open crates on Lowrey's load and that he took copper from the other open crates, not just from the crate containing the four-inch-wide copper bars, and (2) that Bueno's testimony would contradict this. While Dunavant did testify that there were other crates containing different sizes of copper bars on Lowrey's load and that the crates could be easily opened and closed, she also testified that she received notification from Schneider Electric that only one box had been opened in transit, this being the box containing the four-inch-wide bars. When asked if she got a

---

[8]The trial court did, however, enter an order in limine prohibiting the State from arguing "during its closing that [Lowrey] removed some of the other widths [of copper] from the crates" on the load he was carrying on the day in question.

10

notification from either Schneider Electric or Eaton Electric as to whether or not they found any other crates opened, Dunavant responded, "No." Therefore, Bueno's testimony would not have been helpful to rebut Dunavant's testimony.

In addition, the State introduced a document which reflected that Schneider Electric received the shipment and that it included (1) order number "1443685-2," (2) copper bars, (3) packaged as one "skid," (4) with a gross weight of "2,225" pounds, (5) the net weight of "2,140," and (6) the notation "[one] open pallet."[9] The same document reflected three very similar entries regarding the gross weight and net weight of three more "skid[s]" of copper on Lowrey's load, along with the order numbers "1443685-1," "1443685-3," and "1443685-4." However, there was no notation "[one] open pallet" next to those three order numbers.

Another exhibit at trial was Hussey Copper's "customer packing list," with bill of lading number 1693432, which was supposed to be delivered to Schneider Electric. The packing list contained the hand-written comment "open pallet missing material" next to the order number "1443685-2," for an order of copper as "round edge," approximately 4" x 144", one case, forty-eight pieces, net weight of "2140." The list was dated "29-Apr-2013." There were also three similar descriptions of copper which bore different order numbers. However, the notation "open pallet missing material" was not included beside any of those order numbers.

Moreover, Lowrey's own exhibit (which was a document from Schneider Electric) reflected that order number 1443685-2 was "non[-]conforming" because it was "incomplete." The document also showed that the delivery quantity was intended to be forty-eight pieces and the

---

[9]The copper is usually stored on a wooden pallet.

"concerned quantity" was forty-one pieces, indicating that when the shipment arrived at Schneider Electric, that particular crate only contained seven bars of copper. Reflecting the description above of order number 1443685-2, the Schneider Electric document showed this specific order should have weighed "2140" pounds, but only weighed "1833.89" pounds, the shortage being apparently due to the forty-one pieces of missing copper.

The State was proceeding against Lowrey for the theft of copper of an amount less than $20,000.00. The evidence at trial showed the load Lowrey was transporting contained crates of copper bars that were four inches in width along with additional crates containing various other sizes of copper bars. The evidence also showed that only one of the crates had been opened before its arrival at Schneider Electric, and that particular crate contained copper bars four inches in width. Lowrey's contention that Dunavant's testimony "implied" that there were other opened crates of copper and that Lowrey was responsible for having also pilfered some of the contents of those crates is contrary to what she stated at trial. Dunavant's testimony, as well as the documentary evidence, made repeated reference to (1) one order number (1443685-2), (2) only one opened crate of copper, (3) the only opened crate containing four-inch-wide copper bars, and (4) the fact that the majority of the forty-eight bars originally in the crate were missing. Bueno's testimony that he inspected the crates upon their arrival at Schneider Electric and that only one box was found opened and missing copper bars four inches in width would have added very little (if anything) to Lowrey's defense.

Further, nothing controverts the evidence that Lowrey sold copper bars to Paris Iron and Metal that varied in width, including four-inch-wide copper bars. At least five of the bars were

12

four inches in width and fit the description of the copper bars contained in the crate that Schneider Electric found opened. The fact that the State introduced photographs of various sizes of copper bars (including four-inch-wide copper bars) is of little consequence to whether a jury could find Lowrey guilty of theft of copper from Joe Tex Express in the amount of $20,000.00 or less. The State was not required to prove that Lowrey sold all of the copper that was missing from the one opened box to any one particular business, only that he stole the copper from Joe Tex Express. Likewise, the State was not required to prove that all of the copper Lowrey sold to Paris Iron and Metal came from the same load he was transporting for Joe Tex Express on May 1, 2013. It was clear from the witnesses and the evidence that the only crate missing copper for which Schneider Electric could directly account was the one crate containing four-inch-wide copper bars. Thus, Bueno's testimony as to what was missing from the shipment would have added little, if anything, to Lowrey's defense.

The trial court could have reasonably concluded that Lowrey failed to show that Bueno's testimony was material to his defense. Therefore, the trial court did not abuse its discretion when it denied Lowrey's request for a writ of attachment for Bueno. Lowrey's first point of error is overruled.[10]

---

[10]The State also maintains that Lowrey failed to exercise diligence in subpoenaing Bueno. Because we overrule Lowrey's first point of error for other reasons, we find it is unnecessary to address the State's contention.

**B.      Did the Trial Court Err When it Denied Lowrey's Motion for a Continuance?**

When the trial court denied Lowrey's writ of attachment for Bueno, Lowrey asked for a continuance to have time to secure Bueno's presence at trial. Article 29.13 of the Texas Code of Criminal Procedure states,

> A continuance or postponement may be granted on the motion of the State or the defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

TEX. CODE CRIM. PROC. ANN. art. 29.13 (West 2006).

In the first motion by a defendant for a continuance based on the absence of a witness, it shall be necessary to state, among other things, "[t]he facts which are expected to be proved by the witness, and it must appear to the court that they are material." TEX. CODE CRIM. PROC. ANN. art. 29.06(3) (West 2006). The motion must be sworn by someone possessing personal knowledge of the facts upon which the movant relies to justify the continuance. TEX. CODE CRIM. PROC. ANN. art. 29.08 (West 2006). We review a trial court's ruling on a motion for a continuance for an abuse of discretion. *Harrison v. State*, 187 S.W.3d 429, 433–34 (Tex. Crim. App. 2005). To establish an abuse of discretion, an appellant must show that actual prejudice was produced by the trial court's ruling. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996) (per curiam).

Here, Lowrey's motion contained a recitation of the events leading up to his request for a continuance and the reasons he believed Bueno's testimony would be material; however, the motion was not sworn to by someone possessing personal knowledge of the facts relied upon for the continuance. Although we find that Lowrey's motion sufficiently apprised the trial court of

14

the nature of Bueno's testimony, the statement was not sworn to, thus, Lowrey failed to preserve his complaint for our review. *See Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995). Further, Bueno's alleged testimony was not sufficiently relevant to impact Lowrey's defense; therefore, even if the trial court had erred in overruling Lowrey's motion for a continuance, any such error was harmless. The trial court did not abuse its discretion in denying Lowrey's motion for a continuance. We overrule Lowrey's second point of error.

### C.      Insufficient Evidence

Lowrey contends that the evidence is insufficient to sustain his conviction because (1) the State did not prove the identity of the victim as alleged in the indictment, or alternatively, (2) there was a material and fatal variance between the victim's name contained in the indictment and the victim's name proven at trial. Because these two points of error are intertwined, we will address them together.

Specifically, Lowrey maintains that the indictment alleged "Joe Tex Express" as the victim, but not as a corporation. As such, "[n]either 'Joe Tex[,]' nor 'Joe Tex Express[,]' nor anyone else testified as to ownership or lack of consent for [Lowrey] to take the copper." Lowrey also contends that if the State adequately proved that Joe Tex Express was a corporation, then a "special owner" would need to be designated in the pleadings, and there was no such designation. In sum, Lowrey contends there was a variance in the name of the owner in the indictment (Joe Tex Express) and the proof at trial regarding the owner of the stolen property.

At one time, Texas courts insisted that "an indictment should be so certain and definite in charging the offense that it leaves nothing to be supplied by intendment or inference." *Northern*

15

*v. State*, 203 S.W.2d 206, 207 (Tex. Crim. App. 1947).  This requirement was so carried to the extreme that an indictment which stated that the defendant had stomped his victim to death was insufficient when it did not state that the stomping was done with the feet of the defendant.  The Texas Court of Criminal Appeals, stinging from the criticism of that ruling, withdrew that kind of requirement.  *Vaughn v. State*, 607 S.W.2d 914, 916 (Tex. Crim. App. [Panel Op.] 1980).

Now, Texas courts hold that a "variance" occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial.  *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001).  In Texas, variance claims have routinely been treated as insufficiency of the evidence issues,[11] rather than as notice-related claims.  *Id*. at 247.  Regardless of how variances are treated, a variance is material only if it operates to the defendant's surprise or otherwise prejudices him.  *Id*. at 249 n.8; *Human v. State*, 749 S.W.2d 832, 837 (Tex. Crim. App. 1988).  When reviewing a variance claim, we must determine whether the charging instrument, as written, informed the defendant of the charge against him sufficiently to allow the defendant to prepare an adequate defense at trial and whether prosecution under the deficiently drafted instrument would subject the defendant to the risk of being prosecuted later for the same crime.  *See, e.g.*, *Traylor v. State*, 561 S.W.2d 492, 494 (Tex. Crim. App. [Panel Op.] 1978).  "The Texas 'immaterial variance' law as set out in *Gollihar* does not apply to the specific statutory elements alleged in the

---

[11]In reviewing the sufficiency of evidence supporting a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Hacker v. State,* 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).  We give deference to "'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318–19).

16

indictment." *Cada v. State*, 334 S.W.3d 766, 774 (Tex. Crim. App. 2011). In other words, when the State fails to prove "a statutorily-enumerated element pled in the indictment," the variance between the indictment and the proof "is *always* material." *Fuller v. State*, 73 S.W.3d 250, 255–56 (Tex. Crim. App. 2002) (Keller, P.J., concurring).

> In charging Lowrey with theft[12] under $20,000.00, the State's indictment read that Lowrey,
>
> in Lamar County, Texas, on or about May 1, 2013, did then and there unlawfully appropriate, by acquiring or otherwise exercising control over property, to-wit: aluminum or bronze or copper or brass of the value of less than $20,000 from Joe Tex Express, the owner thereof, without the effective consent of the owner and with intent to deprive the owner of the property.

The State was required to allege the name of the owner of the stolen property in its indictment against Lowrey. *See Byrd v. State*, 336 S.W.3d 242, 251 n.48 (Tex. Crim. App. 2011) (citing TEX. CODE CRIM. PROC. ANN. art. 21.08 (West 2009)). "When an entity, such as a corporation, owns property, the traditionally preferable practice has been to allege ownership in a natural person acting for the corporation." *Id.* at 252. "Although the *name* of the owner is not a substantial element of theft, the State is required to prove, beyond a reasonable doubt, that the person (or entity) alleged in the indictment as the owner is the *same* person (or entity)—regardless of the name—as shown by the evidence." *Id.* It is the identity of the person (or entity), not the formal name, that guides and controls the sufficiency of the evidence on review. *Id.* at 253.

---

[12]A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2014). "Theft has three elements: (1) an appropriation of property (2) that is unlawful and (3) is committed with the intent to deprive the owner of the property." *Hawkins v. State*, 214 S.W.3d 668, 670 (Tex. App.—Waco 2007, no pet.). "Appropriate" means "to acquire or otherwise exercise control over property other than real property." TEX. PENAL CODE ANN. § 31.01(4)(B) (West Supp. 2014). Appropriation is unlawful if it is without the owner's effective consent. TEX. PENAL CODE ANN. § 31.03(b)(1) (West Supp. 2014).

17

In support of his position, Lowrey points to *Roberts v. State*, 513 S.W.2d 870 (Tex. Crim. App. 1974). In that case, law enforcement discovered appellants loading chain from the rack of a truck cab into the back seat of one of the cars belonging to appellant's father. Officers arrested appellant for felony theft and, shortly after that, spoke with the driver of the truck. The driver identified the chains in the back seat of the car as the chains that had been on his truck. At trial, the driver testified that he worked for the Dahlstron Corporation, that Jack Dahlstron was his boss, and that Dahlstron Corporation was written on the side of the truck. The State also introduced photographs showing that "Dahlstron Corporation" was written on the side of the truck. The alleged owner of the chains, Jack Dahlstron, did not testify. The indictment read that appellant did "fraudulently take and steal certain property. . . , the same being the corporeal personal property of Jack Dahlstron." *Id.* at 871. Appellant argued that the evidence was insufficient to show ownership of the chains in Dahlstron as alleged in the indictment against [him]. The Court of Criminal Appeals agreed. In a very brief opinion, the court found that the State failed to prove its allegations because it never proved that Dahlstron was either the actual owner or the "special owner" of the chains. *Id.* at 872.

Another similar case is *Easley v. State*, 319 S.W.2d 325 (1959). In that case, the indictment charged theft of $6,000.00 from "the corporeal personal property of H. E. Butt." *Id.* However, the proof at trial showed that the owner of the stolen property was H.E. Butt Grocery Co. and not H.E. Butt, individually. Easley's conviction was reversed because of this variance. *Easley* is easily distinguished from this case because its indictment alleged ownership in a person (H.E. Butt), while the evidence proved ownership in a corporation (H.E. Butt Grocery Co.). In the instant

18

case, although the name of the corporation which was the victim of the theft may not be precisely correct, the same corporation was alleged and proved to have been the victim of Lowrey's theft. Although in the *Easley* case there was the possibility of confusion between the corporation (H.E. Butt Grocery Co.) and the individual (H.E. Butt), there is no such possibility here.

Moreover, we do not believe the holding in *Roberts* is compelling and find *Byrd* to be much more instructive in the case before us. As stated in *Byrd*, under the current Penal Code, a corporation may both own and have actual possession of property. According to *Byrd*, it is permissible, and sometimes preferable, to allege an entity (such as a corporation or limited liability company) as the owner of the property from whom the property has been stolen and then call any agent or employee who holds a relevant position in the company to testify that it did not give effective consent for a person to steal or shoplift its property. *Byrd*, 336 S.W.3d at 252.

In this case, the trial court instructed the jury that "owner" means "a person who . . . has . . . possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEX. PENAL CODE ANN. § 1.07(a)(35)(A) (West Supp. 2014). Although the indictment did not name Dunavant as a person acting on behalf of the corporation as the owner of the property, the State proved through her testimony that Joe Tex Express (the entity named in the indictment) was the "owner" of the property during its transport from Kentucky to El Paso, Texas.[13] Her testimony also showed that Lowrey did not have the company's consent to dispose of the copper.

---

[13]When Joe Tex Express ships items from one company to another, Joe Tex Express contractually agrees with the other companies to take responsibility for the contents of the shipment while they are in transit.

19

Moreover, Lowrey can hardly claim that the alleged variance in the indictment deprived him of fair notice of the charge against him since he was employed by the same company whose name was alleged in the indictment. The indictment, as written, informed Lowrey of the charge against him and adequately afforded him the opportunity to prepare a defense. Likewise, it prohibited the State from proceeding with a second trial in the event the jury acquitted Lowrey. For these reasons, we overrule Lowrey's remaining points of error.

We affirm the trial court's judgment.


Bailey C. Moseley
Justice


Date Submitted:     June 2, 2015
Date Decided:       July 14, 2015

Publish

20