Opinion by: Patricia O. Alvarez, Justice
On June 30, 2015, a Starr County Grand Jury returned an indictment against Appellant Salvador Zarate Jr. for two counts of bribery and one count of possession of a controlled substance, less than one gram, alleged to have occurred on December 24, 2014. After several days of trial, on April 14, 2016, the jury returned a guilty verdict on the two counts of bribery and a not-guilty verdict on the possession of a controlled substance. The trial court sentenced Zarate to five-years' confinement in the Institutional Division of the Texas Department of Criminal Justice, suspended and probated for a term of five years. Zarate's motion for new trial was denied by the trial court.
On appeal, Zarate contends (1) the evidence is legally insufficient to support the jury's bribery convictions, (2) the trial court erred in denying his requested entrapment instruction, (3) trial counsel provided ineffective assistance of counsel by failing to seek a continuance when Daisy and Harry Rich failed to comply with the State subpoenas, and (4) the trial court erred in requiring Zarate to forfeit his tax refund as a condition of probation and pay court costs in both bribery counts. Because the trial court erred in charging court costs in two bribery charges stemming from a single criminal action, we reform the trial court's judgment to reflect court costs of $334.00; we affirm the judgment as reformed.
FACTUAL BACKGROUND
The State's first witness was Starr County Sheriff's Officer Justin Falcon. Officer Falcon testified that he was working in the jail, on December 24, 2014, when he received a call from Justice of the Peace Salvador Zarate Jr. instructing him to reduce the bonds for both Daisy Rich and Harry Rich from $30,000.00 each to $5,000.00 each. Officer Falcon explained that although it was not unusual for justices of the peace to call and reduce a bond over the telephone, the Riches had been arrested earlier that same day for manual delivery of a controlled substance, and it was rare that a justice of the peace would *265 call and change a bond within a matter of hours.
Investigator Ismael Guerra, with the 229th Judicial District Attorney's Office, took the stand and testified that he was contacted by Investigator Trinidad Lopez on December 24, 2014, with information "that Justice of the Peace Salvador Zarate Jr., was going to reduce a bond on two individuals that one of our other investigators had previously arrested, and that he was going to get some currency in return." Because the individual asking to make the exchange was Investigator Lopez's wife, Investigator Guerra took charge of the investigation.
Rachel Elizondo, a legal secretary and part-owner in Starr Bail Bonds, testified that shortly after lunch she received a call from Irvin Rich. Irvin informed Elizondo that his parents had been arrested and their bonds had been set at $30,000.00 each. After Elizondo told him the costs associated with the bonds, Irvin told Elizondo that "they didn't have that kind of money." She testified that he called her back a short time later and,
told me that they had kind of gotten some money to see if they can bond them out. And when I asked him what was going on, he started to tell me that the Judge had asked for money, and he could lower those bonds to an amount where they could afford to pay and get them out.
Elizondo testified that Irvin told her than an agreement was made that they were going to pay Justice of the Peace Zarate $500.00 and he was going to reduce the bonds to $5,000.00 each. It was her understanding that the arrangements had already been made. She further testified that she knew that paying to have bonds lowered was illegal and that her husband, Investigator Lopez, overheard the conversation and that he even spoke directly to Irvin.
Elizondo continued that she had never worked with law enforcement before that day and she had never dealt directly with Zarate. During the next several hours, she had multiple telephone conversations with Zarate. They were originally supposed to meet at the parking lot of the Border Town Store; Zarate later called Elizondo and told her to go to his office. Prior to arriving at Zarate's office, Elizondo was outfitted with a watch capable of audio and video recording. She was also provided $500.00 in marked bills and surveillance was arranged outside Zarate's office.
Immediately upon her arrival, Zarate told Elizondo that he had already lowered the bonds. There was no discussion of price with Zarate. He told her, "What they sent you with is fine with me. There is no problem." Zarate was adamant that he could not "get any money," and then directed Elizondo to "[p]ut whatever there." Elizondo put the money on the table in front of Zarate. She confirmed there was already an agreement and, "[t]hey just send me with this." To which Zarate responded, "Okay. Well, whatever is fine. What they gave you. There is no problem with me. There is no problem with that. Don't worry about it. Don't worry about it." Elizondo testified Zarate then "laughed."
On several occasions Elizondo told Zarate that she did not want anyone to think that she took money. "I don't want for there to be any missing money, or there was money left over if something happened." Zarate assured her, "No, no, no. What they gave you, that's for me. That's it." He assured her "it's already lowered for the man .... Yes, I already lowered both of them." When she asked for paperwork, Zarate assured her that he spoke to "Falcon at the jail." As she left, Zarate *266 told her to "tell [the attorney for whom she worked] to do a motion to reduce bond, and for him to send it to me whenever he has a chance."
Elizondo testified that on two different occasions, Zarate appeared nervous and questioned Elizondo whether she was wearing a wire. She further averred that the $500.00 was for the purpose of lowering the bonds for Daisy and Harry Rich; it was not for a political contribution and it was not a donation.
After Elizondo left Zarate's office, Zarate exited the building and was at his pickup truck when Investigator Guerra approached Zarate and advised him that they were conducting an investigation of "something illegal that was going on in his office." Investigator Guerra asked Zarate if he had anything in his pockets. Zarate took the money out of his pocket; he knew that he had exactly $540.00 in his pocket; he also had a box of cigarettes. Investigator Guerra testified that he personally recovered the money at the Justice of the Peace's office in La Victoria, Rio Grande City, Starr County, Texas; the money was in the possession of Salvador Zarate Jr. Investigator Guerra verified it was the same marked bills that he had previously provided to Elizondo.
Zarate told Investigator Guerra that the money was his and, after Investigator Guerra told Zarate the money was going to be seized, Zarate stated that it "was going to leave him without any Christmas money." Investigator Guerra also received permission from Zarate to search Zarate's pickup truck. He identified a bag that was located in the pickup truck as the "same bag that Justice of the Peace Zarate walked out with from inside his office." Investigator Guerra further testified that he has known Zarate since 2004 and that he was familiar with the bag; it was the same bag that Zarate always takes inside the jail. Investigator Guerra explained Zarate keeps all of his paperwork to magistrate defendants in the bag. Inside the bag, the officers found a "Marlboro cigarette box with no cigarettes, only a clear, corner-cut, classic baggy containing a white, powdery substance." The substance was later confirmed to be cocaine.
After the State rested, the defense called several witnesses. Juan Artemio Barrera testified that he had known Zarate for ten years and was contacted by Martin Terran to see if Zarate could "help" after Daisy and Harry Rich were arrested. Barrera spoke to Zarate and then Terran. Terran then spoke to Zarate and Mascorro Bail Bonds. Barrera and Terran both denied speaking to Elizondo or offering Zarate money in exchange for reducing the bonds.
The trial court denied defense counsel's motion for directed verdict and his requests to include an entrapment instruction in the court's jury charge. Following closing arguments, the jury began deliberations, during which time several notes were submitted to the trial court, including a request for a computer on which to view the videotapes submitted in evidence. After approximately six hours of deliberations, the jury returned a not guilty verdict on the possession of a controlled substance, but found Zarate guilty on both counts of bribery.
After considering a presentence investigation report and seventeen letters of recommendation, the trial court opined as follows:
At the end of the day, it's not a win/win; it's a lose/lose. It's not only a loss for you, Mr. Zarate, and your family, but it's a loss to our judicial system. It's especially a loss to our great county, and a really bad loss for the good folks of Alto Bonito. It's just a bad situation.
*267 The trial court subsequently sentenced Zarate to five-years' confinement in the Institutional Division of the Texas Department of Criminal Justice, suspended and probated for a term of five years, on each count.
Zarate raises four issues on appeal: (1) the evidence is legally insufficient to support the jury's bribery convictions, (2) the trial court erred in denying his requested entrapment instruction, (3) trial counsel provided ineffective assistance of counsel by failing to seek a continuance when Daisy and Harry Rich failed to comply with the State subpoenas, and (4) the trial court erred in requiring Zarate to forfeit his tax refund as a condition of probation and pay court costs in both bribery counts.
We turn first to Zarate's sufficiency of the evidence issues: whether there was a material variance between the crime alleged and the crime proved and whether the evidence was insufficient to support the jury's conviction for two counts of bribery.
SUFFICIENCY OF THE EVIDENCE
A. Standard of Review
In reviewing the sufficiency of the evidence, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Adames v. State , 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) ; accord Gear v. State , 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence...." Adames , 353 S.W.3d at 860 ; accord Gear , 340 S.W.3d at 746. The reviewing court must also give deference to the jury's ability "to draw reasonable inferences from basic facts to ultimate facts." Hooper v. State , 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." Id. (citing Johnson v. State , 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ).
We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. King v. State , 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We defer to the jury's responsibility to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. See Hooper , 214 S.W.3d at 13 ; King , 29 S.W.3d at 562. The jury alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence. See Hooper , 214 S.W.3d at 15 ; Young v. State , 358 S.W.3d 790, 801 (Tex. App.-Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." Young , 358 S.W.3d at 801.
B. Arguments of the Parties
Zarate contends the State failed to produce any evidence of an agreement to accept or an acceptance of $500.00 cash from Daisy Rich and Harry Rich. Zarate contends the variance is material because he did not have notice that the State intended to prove that he committed bribery by receiving money from Rachel Elizondo; more importantly, Zarate avers he could potentially be subject to prosecution again for the crime that was actually proved at trial. Alternatively, Zarate contends the State only introduced evidence that Zarate agreed to accept $500.00 in cash to reduce Daisy Rich's bond, and not the bond for Harry Rich.
*268 The State counters the evidence supports an agreement to accept and acceptance of $500.00 cash in exchange for reduction of the bonds of Daisy and Harry Rich.
C. Proof Required to Prove Bribery
Texas Penal Code section 36.02(a)(3) provides that a person commits the offense of bribery "if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another ... any benefit as consideration for a violation of a duty imposed by law on a public servant or party official." TEX. PENAL CODE ANN. § 36.02(a)(3) (West 2016). "A person acts intentionally ... when it is his conscious objective or desire to engage in the conduct or cause the result."Id. § 6.03(a) (West 2011). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." Id. § 6.03(b). Intent or knowledge may be inferred from the accused's acts, words, and conduct. Guevara v. State , 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ; Hart v. State , 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). In its determination of intent or knowledge, the jury may consider events that occurred "before, during, and after the commission of the offense." Pitonyak v. State , 253 S.W.3d 834, 844 (Tex. App.-Austin 2008, pet. ref'd). We remain mindful that our standard of review requires deference to the factfinder, including making any reasonable inferences from the circumstantial evidence as to intent that could have been made by the factfinder. Hooper , 214 S.W.3d at 14-15 (citing Guevara , 152 S.W.3d at 49 ).
Texas Code of Criminal Procedure article 17.15 provides the court, judge, or magistrate may, at his or her discretion, set a defendant's bail based on the following criteria:
1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
2. The power to require bail is not to be so used as to make it an instrument of oppression.
3. The nature of the offense and the circumstances under which it was committed are to be considered.
4. The ability to make bail is to be regarded, and proof may be taken upon this point.
5. The future safety of a victim of the alleged offense and the community shall be considered.
TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2015) ; see Golden v. State , 288 S.W.3d 516, 518 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd). The justice of the peace maintains discretion over the amount of bail, including whether the bail is excessive or should be increased, until an indictment has been returned. See Ex parte Mapula , 538 S.W.2d 794, 794 (Tex. Crim. App. 1976) ; accord Ex parte Chavfull , 945 S.W.2d 183, 184-85 (Tex. App.-San Antonio 1997, no pet.). When that discretion is perverted by a bribe that results in special treatment of one citizen, public trust is corrupted and corroded. See Cox v. State , 166 Tex.Crim. 587, 316 S.W.2d 891, 894 (1958).
D. Analysis
1. Material Variance
Zarate contends the indictment and the jury charge allege Zarate received money from Daisy Rich in consideration for reduction of Daisy Rich's bond and from Harry Rich in consideration for reduction of Harry Rich's bond. Relying on Byrd v. State , Zarate asserts that because the evidence shows the only exchange of *269 money occurred between Zarate and Elizondo, there is a material variance between the crime as alleged and the crime proved. 336 S.W.3d 242, 244 (Tex. Crim. App. 2011).
"[A] variance is material only if it operates to the defendant's surprise or otherwise prejudices him." Lowrey v. State , 469 S.W.3d 318, 328 (Tex. App.-Texarkana 2015, pet. ref'd) (citing Gollihar v. State , 46 S.W.3d 243, 249 n.8 (Tex. Crim. App. 2001) ). An appellate court looks at the charging instruction to determine whether it "informed the defendant of the charge against him sufficiently to allow the defendant to prepare an adequate defense at trial and whether prosecution under the deficiently drafted instrument would subject the defendant to the risk of being prosecuted later for the same crime." Id. In Byrd , the Court of Criminal Appeals considered whether an indictment alleging theft and identifying the victim as "Mike Morales" when the evidence at trial identified the victim as "Wal-Mart" constituted a fatal variance or an immaterial variance. 336 S.W.3d at 244-45. In concluding that the variance was fatal, the court examined prior double-jeopardy cases and concluded that the variance was material, and therefore fatal, because it left the defendant exposed to a second prosecution for the same offense. Id. at 257.
"The gist of the offense of bribery is the conferring of a benefit upon a public servant as consideration for violation of one of his duties." Gahl v. State , 721 S.W.2d 888, 893 (Tex. App.-Dallas 1986, pet. ref'd) ; accord Hubbard v. State , 668 S.W.2d 419, 420 (Tex. App.-Dallas 1984), remanded on other grounds , 739 S.W.2d 341 (Tex. Crim. App. 1987). Here, the indictment alleged that Zarate, a public servant, accepted money, consideration, in exchange for conferring a benefit, reducing the bonds of Daisy and Harry Rich, in violation of his duties under article 17.15 of the Code of Criminal Procedure. "The clear implication is that the offenses alleged in the indictment were the same as the offenses designated pre-trial and then later proven at trial." See Sledge v. State , 953 S.W.2d 253, 255-56 (Tex. Crim. App. 1997). Never once did Zarate claim in the trial court that the indictment failed to provide sufficient notice of who provided the monies. Moreover, based on the evidence contained in the appellate record, there is no danger of Zarate being prosecuted for the same offenses that were proved at trial. Cf. Byrd , 336 S.W.3d at 244-45. We, thus, conclude there was no material variance between the crime alleged and the crime proved at trial.
2. Legally Insufficient to Support Convictions for Reducing the Bonds of Both Daisy and Harry Rich
Zarate contends the State charged Zarate with receiving $500.00 cash from Daisy Rich and $500.00 cash from Harry Rich. Zarate contends, however, the evidence only establishes that he accepted $500.00 and no evidence supports he accepted any consideration for reducing the bond of Harry Rich.
Our analysis considers the evidence of Zarate's actions before, during, and after the exchange of monies. See Pitonyak , 253 S.W.3d at 844. The jury heard testimony from Officer Falcon that Zarate set the Riches' bonds at $30,000.00 each during the early morning hours of December 24, 2014. Less than twelve hours later, Zarate called and advised Officer Falcon to reduce the bonds to $5,000.00 each. The jury also heard both direct and circumstantial evidence that Zarate was offered money and accepted money in exchange for reducing the bonds for Daisy and Harry Rich. Elizondo testified that Irvin Rich, Daisy and Harry's son, told her the $500.00 payment *270 was in exchange for the reduction of both bonds. Investigator Lopez testified that he was sitting next to Elizondo and could hear the conversation through the telephone.
In addition to seeing videotaped recordings of Zarate entering and exiting his office, the jury also heard audiotapes that included Zarate immediately telling Elizondo that the bonds had already been lowered. There were further discussions regarding reducing the bonds for both Daisy and Harry: "I just spoke to his [Harry's] compadre about paying;" "But it's already lowered for the man;" and "Yes, I already lowered both of them." When Elizondo questioned whether she needed paperwork, Zarate assured her that he spoke to Officer Falcon and everything was secured.
Zarate had a legal duty to set the bonds. See TEX. CODE CRIM. PROC. ANN. art. 17.15. Viewing the evidence in the light most favorable to the jury's verdict, Adames , 353 S.W.3d at 860, the jury could have reasonably concluded that Zarate set both Daisy Rich's and Harry Rich's bonds at $30,000.00, see TEX. CODE CRIM. PROC. ANN. art. 17.15. Based on Zarate's actions, words, and conduct, the jury could have also reasonably concluded that Zarate agreed to accept $500.00 in exchange for lowering the bonds of both Daisy Rich and Harry Rich to $5,000.00 each. See Guevara , 152 S.W.3d at 50 ; Hart , 89 S.W.3d at 64.
Remaining deferential to any reasonable inferences the jury could have made from the circumstantial evidence, see Hooper , 214 S.W.3d at 14-15, we conclude the evidence supports that Zarate accepted money, in exchange for reducing the bonds, thereby conferring a benefit on both Daisy and Harry Rich, in violation of the duty imposed by law on Zarate as a justice of the peace. We, therefore, conclude, the evidence is sufficient for the jury to have found, beyond a reasonable doubt, that Zarate intentionally and knowingly agreed to confer on Daisy and Harry Rich a benefit as consideration for a violation of his legal duty to set a bond in accordance with article 17.15 of the Texas Code of Criminal Procedure. See TEX. CODE CRIM. PROC. ANN. art. 17.15 ; Adames , 353 S.W.3d at 860.
Zarate's issues related to the sufficiency of the evidence are overruled. We turn next to Zarate's assertion the trial court erred in refusing to include an instruction on entrapment in the court's charge.
INSTRUCTION ON ENTRAPMENT
A. Standard of Review
"It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense." TEX. PENAL CODE ANN. § 8.06(a) (West 2011). The defendant bears the burden of establishing entrapment as a matter of law with conflict-free, uncontradicted, uncontested, or undisputed evidence. Hernandez v. State , 161 S.W.3d 491, 499 (Tex. Crim. App. 2005). "Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." TEX. PENAL CODE ANN. § 8.06(a). In other words, the entrapment defense is not raised when the evidence indicates that the criminal design originated in the appellant's mind and that the officers merely furnished the opportunity for commission of the crime. Reese v. State , 877 S.W.2d 328, 333 (Tex. Crim. App. 1994).
B. Arguments of the Parties
Zarate contends the caselaw supports he can plead not guilty and still claim entrapment as long as he does not submit inconsistent *271 evidence. Here, Zarate contends the evidence supports that he was induced to reduce the bonds in exchange for funds by an agent acting on behalf of law enforcement, despite his repeated protests that he could not accept money, and the agent simply left the money on his desk.
The State counters that Zarate did not present a prima facie showing that he was improperly induced by law enforcement to commit the offense.
C. Entrapment
To warrant an instruction for entrapment, a defendant "must present a prima facie case that: 1) he engaged in the conduct charged; 2) because he was induced to do so by a law enforcement agent; 3) who used persuasion or other means; and 4) those means were likely to cause persons to commit the offense." Hernandez , 161 S.W.3d at 497 (citing TEX. PENAL CODE ANN. § 8.06(a) ). Entrapment includes both a subjective and an objective component: the defendant must show both that he was actually induced to commit the charged offense and that the persuasion was such as to cause an ordinarily law-abiding person of average resistance to commit the crime. Id. at 497 n.11 (citing England v. State , 887 S.W.2d 902, 913-14 (Tex. Crim. App. 1994) ). "The subjective element requires evidence that 'the accused himself was actually induced to commit the charged offense by the persuasiveness of the police conduct.' " Id. (quoting England , 887 S.W.2d at 913 n.10 ); see also Melton v. State , 713 S.W.2d 107, 112 (Tex. Crim. App. 1986) (acknowledging a defendant may plead "not guilty" to the offense, not take the stand, and still be entitled to an entrapment defense as long as no evidence is presented negating any element of the offense charged). The objective element requires evidence that "the persuasion was such as to cause an ordinarily law-abiding person of average resistance nevertheless to commit the offense." Hernandez , 161 S.W.3d at 497 n.11 (quoting England , 887 S.W.2d at 914 ); Flores v. State , 84 S.W.3d 675, 682 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd).
A trial court is required to include an instruction on a defensive issue if properly requested by the defense and if evidence from any source raises that defense. Shaw v. State , 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007) (citing TEX. PENAL CODE ANN. § 2.03(c) (West 2011) ); accord Muniz v. State , 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). Whether a defendant is entitled to the instruction does not turn on issues of credibility; the evidence may be strong, weak, contradicted, unimpeached, or unbelievable, so long as there is evidence supporting each element of the defense. See Shaw , 243 S.W.3d at 658 ; Muniz , 851 S.W.2d at 254. "Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law." Shaw , 243 S.W.3d at 658. When the evidence fails to raise a defensive issue, the trial court does not err in refusing the defendant's request. Muniz , 851 S.W.2d at 254.
D. Analysis
Nothing in the record indicates that Zarate was either subjectively or objectively induced by Elizondo or law enforcement to commit the offense by such persuasion that would cause an ordinarily law-abiding person of average resistance to commit the crime of bribery. See TEX. PENAL CODE ANN. § 8.06(a) ; England , 887 S.W.2d at 908. Additionally, the evidence supports that Zarate made the call to the sheriff's office and reduced the bonds prior to Elizondo providing the monies. In fact, all of the witnesses, and the video-recording offered before the jury, supported the State's position that Zarate reduced the *272 bonds for both Daisy and Harry Rich in anticipation of receiving the $500.00. Elizondo simply supplied the $500.00. Assuming, arguendo, Elizondo introduced the topic of bribery during one of her telephone calls with Zarate, the evidence supports that Zarate told Elizondo during their meeting, "What they gave you [the money], that's for me." He then confirmed, "Yes, I already lowered [the bond for] both of them." The evidence supports that Zarate came to an agreement with a third party for the benefit of Daisy and Harry Rich, called the jail and lowered the bonds for both Daisy and Harry Rich, met with Elizondo for the sole purpose of collecting $500.00, and the money was in exchange for Zarate's actions in reducing the bonds from $30,000.00 to $5,000.00 for both Daisy and Harry Rich. See Resendez v. State , 160 S.W.3d 181, 189 (Tex. App.-Corpus Christi 2005, no pet.).
Moreover, the record does not contain any evidence upon which we could conclude that an ordinary law-abiding person of average resistance would have been induced to reduce the bonds in exchange for monies. See Hernandez , 161 S.W.3d at 497 n.11 (considering whether law enforcement used "pleas of extreme need, sympathy, pity, or close personal friendship" or any other methods of persuasion "likely to cause [an] otherwise unwilling person-rather than [a] ready, willing and anxious person-to commit an offense"); Resendez , 160 S.W.3d at 189. At best, Elizondo merely afforded Zarate an opportunity to commit the offense. See Hernandez , 161 S.W.3d at 498. The $500.00 sum of money offered to Zarate would not have induced an ordinary law-abiding citizen to commit a felony. See January v. State , 720 S.W.2d 207, 210 (Tex. App.-Houston [14th Dist.] 1986, no pet.) (concluding potential $50,000 profit by manufacturing a controlled substance constituted mere opportunity to commit offense and did not meet objective test).
Because there is no evidence in the record that any action taken by Elizondo, or any law enforcement officer, induced Zarate to reduce the bonds, the evidence did not raise the defense of entrapment. See TEX. PENAL CODE ANN. § 8.06(a) ; England , 887 S.W.2d at 908 (requiring evidence of inducement such that would induce ordinary law-abiding person of average resistance to commit the crime). Therefore, Zarate was not entitled to a jury instruction on the defense of entrapment and we overrule his entrapment issue.
Zarate next contends his trial counsel's proceeding to trial, without the securing the testimony of Daisy and Harry Rich, constituted ineffective assistance of counsel.
INEFFECTIVE ASSISTANCE OF COUNSEL
A. Standard of Review
When, as here, a defendant raises the issue of ineffective assistance in a motion for new trial, an appellate court reviews the trial court's denial of the motion for abuse of discretion. Riley v. State , 378 S.W.3d 453, 457 (Tex. Crim. App. 2012) ; Straight v. State , 515 S.W.3d 553, 564 (Tex. App.-Houston [14th Dist.] 2017, pet. ref'd) ; see also Burch v. State , No. PD-1137-16, 541 S.W.3d 816, 820, 2017 WL 5476333, at *3 (Tex. Crim. App. Nov. 15, 2017) (reviewing denial of motion for new trial and "reversing only if no reasonable view of the record could support the trial court's ruling"). An appellate court "must uphold the trial court's ruling if it is within the zone of reasonable disagreement." Riley , 378 S.W.3d at 457 ; accord Webb v. State , 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).
"In the absence of express findings, as here, we presume that the trial *273 court made all findings in favor of the prevailing party." Okonkwo v. State , 398 S.W.3d 689, 694 (Tex. Crim. App. 2013) ; Riley , 378 S.W.3d at 459. "The trial court, as factfinder, is the sole judge of witness credibility at a hearing on a motion for new trial with respect to both live testimony and affidavits." Okonkwo , 398 S.W.3d at 694. The appellate court must, therefore, afford "almost total deference to a trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor." Riley , 378 S.W.3d at 458. "We review de novo the trial court's decision on the [ Strickland ] prejudice prong while giving deference to the trial court's implied resolution of the underlying factual determinations supporting denial of the motion...." Straight , 515 S.W.3d at 564.
B. Arguments of the Parties
Zarate contends his trial counsel was ineffective because he failed to interview known material witnesses, specifically Daisy and Harry Rich, who would have negated the elements of the charge.
The State counters that nothing in the affidavits of Daisy and Harry Rich provides a reasonable probability that the outcome of the trial would have been different.
C. Proving Ineffective Assistance of Counsel
In Strickland v. Washington , 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set out a two-prong test to determine whether trial counsel's representation was ineffective: (1) "the defendant must show that counsel's performance was deficient" and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687, 694, 104 S.Ct. 2052 ; accord Ex parte Moore , 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) ; Menefield v. State , 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).
To establish the first prong, deficient performance, Zarate must prove that his attorney's performance " 'fell below an objective standard of reasonableness' under prevailing professional norms." Ex parte Moore , 395 S.W.3d at 157 (quoting Strickland , 466 U.S. at 687-88, 104 S.Ct. 2052 ); see also Ex parte Martinez , 330 S.W.3d 891, 900 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of the proceeding]." Ex parte Moore , 395 S.W.3d at 158 n.3 (quoting Strickland , 466 U.S. at 694, 104 S.Ct. 2052 ).
To prove harm, Zarate "must demonstrate that he was prejudiced by his attorney's performance or that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " Id. (footnote omitted) (quoting Strickland , 466 U.S. at 694, 104 S.Ct. 2052 ).
Additionally, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." Thompson v. State , 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ; accord Burgess v. State , 448 S.W.3d 589, 602 (Tex. App.-Houston [14th Dist.] 2014, no pet.). "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Thompson , 9 S.W.3d at 813. Therefore, Zarate "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Ex parte Moore , 395 S.W.3d at 157 (quoting Strickland , 466 U.S. at 689, 104 S.Ct. 2052 ).
*274 Appellate courts further view matters "from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." Ex parte Jimenez , 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) ; accord Ex parte Overton , 444 S.W.3d 632, 640 (Tex. Crim. App. 2014). Our review of trial counsel's actions is "highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." Garza v. State , 213 S.W.3d 338, 348 (Tex. Crim. App. 2007) (citing Bone v. State , 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) ); see also Rodriguez v. State , 336 S.W.3d 294, 302 (Tex. App.-San Antonio 2010, pet. ref'd) (affirming that in the absence of a developed record, an appellate court should not "speculate as to the reasons why trial counsel acted as he did, rather a reviewing court must presume that the actions were taken as part of a strategic plan for representing the client"). Moreover, an "appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.' " Menefield , 363 S.W.3d at 593 (quoting Garcia v. State , 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ).
D. Analysis
Zarate's motion for new trial relied on affidavits of Harry and Daisy Rich, both of which opined they had neither hired nor met Rachel Elizondo and never paid her $500.00 to give to Zarate.
We turn first to Strickland's second prong, whether Zarate demonstrated harm, or more specifically, "but for counsel's unprofessional errors," Zarate would have been found not guilty. See Ex parte Moore , 395 S.W.3d at 158 ; Strickland , 466 U.S. at 694, 104 S.Ct. 2052. Both Daisy and Harry's affidavits opine they did not agree to pay Zarate in exchange for the reduction of their bonds. Yet, the State's case never relied on any exchange between Daisy and Zarate or Harry and Zarate. The State's case rested on the exchange between Irvin Rich and Elizondo, and Elizondo and Zarate. Before, during, and after the commission of the bribery, both Daisy and Harry were incarcerated at the Starr County Jail and unable to communicate with Zarate. The monies paid to Zarate were for the benefit of Daisy and Harry Rich. The monies paid to Zarate were in exchange for Zarate lowering the bonds for both Daisy and Harry Rich from $30,000.00 to $5,000.00 each. Zarate's actions in reducing the bonds in exchange for the monies violated his legal duty to set a bond in accordance with article 17.15 of the Texas Code of Criminal Procedure. See TEX. CODE CRIM. PROC. ANN. art. 17.15. Because nothing in Daisy Rich's affidavit or Harry Rich's affidavit would have changed any of these facts, there is no reasonable probability that the outcome of the trial would have been different, and Zarate failed to prove harm as required by Strickland's second prong. See Strickland , 466 U.S. at 694, 104 S.Ct. 2052. Because Zarate failed to prove harm, we need not address deficient performance. See Ex parte Moore , 395 S.W.3d at 157. Zarate's ineffective assistance of counsel claim is overruled.
Lastly, we turn to Zarate's assertion the trial court erred in requiring Zarate to forfeit his federal tax refund as a condition of community supervision and assessing court costs in all three causes.
CLAIMS OF MONETARY ERRORS IN THE JUDGMENT
An appellate court's review of the probation conditions imposed on a defendant is limited to determining whether the trial court abused its discretion. Leblanc v. State , 908 S.W.2d 573, 574 (Tex. App.-Fort Worth 1995, no pet.) ; see also *275 Todd v. State , 911 S.W.2d 807, 817 (Tex. App.-El Paso 1995, no pet.). This standard of review recognizes that trial judges with first-hand familiarity with the circumstances of a case and the characteristics of a defendant-not appellate courts reading a cold record-are best equipped to make the sensitive, fact-specific judgments required when imposing probation conditions. Cf. Newbury v. State , 135 S.W.3d 22, 32 (Tex. Crim. App. 2004).
Zarate contends the trial court's requirement that he forfeit his federal tax refund to the community supervision office, if he is in financial arrears, is not authorized by the Texas Code of Criminal Procedure and violates his due process rights. Because the State agrees to reform the condition of community supervision as requested, we need not address this issue.
Zarate also contends the trial court erred in assessing court costs for each count. Article 102.073 of the Texas Code of Criminal Procedure states "[i]n a single criminal action in which a defendant is convicted of two or more offenses ... the court may assess each court cost or fee only once against the defendant." TEX. CODE CRIM. PROC. ANN. art. 102.073(a) (West Supp. 2017). The article further states that "each court cost or fee the amount of which is determined according to the category of offense must be assessed using the highest category of offense that is possible based on the defendant's convictions." Id. art. 102.073(b). The trial court assessed court costs of $334.00 for each count and the State concedes this was in error. See Williams v. State , 495 S.W.3d 583, 589 (Tex. App.-Houston [1st Dist.] 2016, pet. dism'd) (explaining that defendant may challenge on appeal "basis for assessing costs three times when, under article 102.073(a), the costs should have only been assessed once").
CONCLUSION
Because Zarate was convicted based on a single criminal action, the trial court may only assess a single court cost. We therefore reform the Trial Court's Order Imposing Conditions of Community Supervision to delete condition number twenty-five requiring Zarate forfeit his federal tax refund if he falls in financial arrears and reform the judgment to delete the award of costs in count three. See Robinson v. State , 514 S.W.3d 816, 828 (Tex. App.-Houston [1st Dist.] 2017, pet. ref'd). Having overruled each of Zarate's other issues on appeal, we affirm the judgment as reformed.