

# NUMBER 13-24-00016-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MARISSA MONICA CANO,  Appellant,

v.

THE STATE OF TEXAS,  Appellee.

## ON APPEAL FROM THE 290TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Memorandum Opinion by Chief Justice Tijerina**

A jury convicted appellant Marissa Monica Cano of two counts of aggravated assault with a deadly weapon (Counts I and III), second-degree felonies; one count of assault on a family member by choking (Count IV), a third-degree felony, one count of injury to a child with intent to cause bodily injury (Count V), a third-degree felony; one count of endangering a child (Count VI), a state jail felony, and one count of tampering

with evidence (Count VII), a third-degree felony.[1] *See* TEX. PENAL CODE ANN. §§ 22.01(a), 22.02(a)(2), 22.04(a)(3), 22.041(c), 37.09. The jury assessed punishment at twenty years' imprisonment on the aggravated assault counts, ten years on the assault on a family member count, two years on the endangering a child count, and five years on the tampering with evidence count. By five issues, Cano argues the trial court erred by: (1) ordering the sentences to run consecutively; (2) assessing court costs in all six judgments; (3) failing to dismiss the superseding indictment; (4) failing to inquire into Cano's ability to pay court costs; and (5) failing to dismiss the case for speedy trial violations. We affirm as modified.[2]

## I.    CONSECUTIVE SENTENCES

By her first issue, Cano argues that the trial court erred by ordering the sentences to be cumulated. The State agrees this is error and requests that we modify the judgment to delete the cumulation orders.

If a defendant "is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, a sentence for each offense for which he has been found guilty shall be pronounced. Except as provided by Subsection (b), the sentences shall run concurrently." TEX. PENAL CODE ANN. § 3.03(a); *Baker v. State*, 107 S.W.3d 671, 672–73 (Tex. App.—San Antonio 2003, no pet.). It is undisputed that none of the exceptions listed in § 3.03(b) apply here, and it is also undisputed that Cano was convicted in a single criminal action for all offenses arising out of the same

---

[1] The jury acquitted Cano of a third count of aggravated assault with a deadly weapon (Count II).

[2] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

2

criminal episode. *See* TEX. PENAL CODE ANN. § 3.02. Therefore, "the trial court's stacking order was improper." *Baker*, 107 S.W.3d at 673. Accordingly, we modify the judgments to delete the cumulation orders. *Id.* at 674. We sustain Cano's first issue.

## II.  COURT COSTS

By her second issue, Cano argues the trial court erred by assessing costs in each of the six judgments.

"In a single criminal action in which a defendant is convicted of two or more offenses . . . the court may assess each court cost or fee only once against the defendant." TEX. CODE CRIM. PROC. ANN. art. 102.073(a); *Zarate v. State*, 551 S.W.3d 261, 275 (Tex. App.—San Antonio 2018, pet. ref'd). "[E]ach court cost or fee the amount of which is determined according to the category of offense must be assessed using the highest category of offense that is possible based on the defendant's convictions." TEX. CODE CRIM. PROC. ANN. art. 102.073(b). Here, the State concedes that the trial court improperly assessed court costs of $650 for each count. *See Zarate*, 551 S.W.3d at 275. Because it is undisputed that Cano was convicted based on a single criminal action, the trial court may only assess court costs once. TEX. CODE CRIM. PROC. ANN. art. 102.073(a); *Zarate*, 551 S.W.3d at 275. Therefore, we sustain Cano's second issue, and we modify

3

the judgments to delete the award of costs in counts three through seven. *See Zarate*, 551 S.W.3d at 275; *see also* TEX. R. APP. P. 43.2(b).

## III. WAIVER

By her fourth issue, Cano argues the trial court erred in failing to inquire into her ability to pay court costs. The State argues Cano waived this issue because she did not object in the trial court.

Article 42.15(a-1) of the Texas Code of Criminal Procedure provides generally that "during or immediately after imposing a sentence in a case, . . . a court shall inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs." TEX. CODE CRIM. PROC. ANN. art. 42.15(a-1). However, the Texas Court of Criminal Appeals held that the right to an ability-to-pay inquiry under this statute is forfeitable by a defendant:

> An ability-to-pay inquiry is not fundamental to the adjudicatory system; it is a post-trial procedure that has nothing to do with adjudication; it does not ensure a jury, a fair trial, a correctly informed sentencing judge, or a defendant's ability to understand the proceedings against him. It does not implicate the integrity of judicial sentencing proceedings or the criminal adjudicatory process . . . . Requiring an objection to enforce it would not undermine the public's perception of the fairness of our judicial system or engender suspicions about the system's fairness and accuracy. In short, an ability-to-pay inquiry made during or right after sentencing bears no consequence to the adjudicatory process.

*Cruz v. State*, 698 S.W.3d 265, 269 (Tex. Crim. App. 2024) (internal quotations omitted). The record provides that Cano did not object to the lack of an inquiry to the trial court. Therefore, she "forfeited h[er] right to the inquiry by not objecting" in the trial court. *Id.* at

4

271; *see also Ybarra v. State*, 705 S.W.3d 819, 822 (Tex. App.—San Antonio 2024, no pet.). Accordingly, we overrule Cano's fourth issue.

## IV. LIMITATIONS

By her third issue, Cano argues the trial court erred when it denied her motion to dismiss the superseding indictment because it was filed outside the statute of limitations period.

### A. Pertinent Facts

On October 3, 2019, Cano was originally indicted for the following offenses: (1) continuously trafficking a child, namely C.R., during the period of May 1, 2017 through October 14, 2017; (2) aggravated assault causing bodily injury to T. R. by hitting him with a bat, on or about October 14, 2017; (3) aggravated assault causing bodily injury to T.R. by impeding his normal breathing or circulation, on or about October 14, 2017; (4) aggravated assault causing bodily injury to O.R., a child under fourteen years of age, by striking her with a bat, on or about October 1, 2017; (5) aggravated assault causing bodily injury to O.R. by striking her with a belt, on or about October 5, 2017; (6) engaging in conduct that placed O.R. in imminent danger of bodily injury by locking her in a garage without access to food or water, on or about October 14, 2017; and (7) tampering with evidence on or about October 14, 2017.

On May 15, 2023, the State filed a motion for continuance. On May 16, 2023, the State filed a superseding indictment in a new cause number and a motion to dismiss the old indictment. The trial court granted the State's motion to dismiss on the same day. On July 10, 2023, Cano filed a motion to dismiss the superseding indictment, alleging that all the offenses charged were outside the statute of limitations. The State filed another

motion to amend the indictment, requesting to add the following allegation regarding tolling of limitations:

> The defendant was previously charged by indictment in 2019CR10930C on October 3, 2019, for offenses alleged to have occurred in October of 2017. The indictment listed [C.R.], [T.R.], and [O.R.] as complainants for the same conduct, same acts, and/or same transactions. That indictment tolled the statute of limitations from the period of October 3, 2019[,] to May[] 16, 2023.

The trial court granted the State's motion to amend the indictment.

> The superseding indictment alleged the following:

Count 1:    on or about the 14th Day of October, 2017, [] CANO . . . did use and exhibit a deadly weapon, NAMELY: A BAT, and defendant did intentionally, knowingly and recklessly CAUSE BODILY INJURY to [T.R.], hereinafter referred to as complainant, by STRIKING THE COMPLAINANT WITH SAID BAT;

.    .    .    .

Count III:    on or about the 14th Day of October, 2017, [] CANO . . . did use and exhibit a deadly weapon, NAMELY: A BAT THAT IN THE MANNER OF ITS USE AND INTENDED USE WAS CAPABLE OF CAUSING DEATH AND SERIOUS BODILY INJURY, and defendant did intentionally, knowingly and recklessly CAUSE BODILY INJURY to [O.R.], hereinafter referred to as complainant, by STRIKING THE COMPLAINANT WITH SAID DEADLY WEAPON;

Count IV:    on or about the 14th Day of October, 2017, [] CANO . . . did intentionally, knowingly, and recklessly cause bodily injury to [T.R.], a member of the defendant's FAMILY OR HOUSEHOLD, hereinafter referred to as complainant, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of [T.R.] by APPLYING PRESSURE TO THE THROAT OR NECK of [T.R.];

Count V:    on or about the 5th Day of October, 2017, [] CANO . . . did intentionally and knowingly cause bodily injury to [O.R.], a

child who was fourteen (14) years of age or younger, by STRIKING [O.R.] WITH A BELT;

Count VI:    on or about the 14th Day of October, 2017, [] CANO, hereinafter referred to as defendant, did INTENTIONALLY AND KNOWINGLY engage in conduct that placed O.R., a child who was younger than fifteen (15) years of age, in imminent danger of BODILY INJURY by LOCKING [O.R.] IN A GARAGE WITHOUT ACCESS TO FOOD [O.R.] WATER; and the defendant did not voluntarily deliver the child to a designated emergency infant care provider under [§] 262.302, Family Code;

Count VII:   on or about the 14th Day of October, 20.17, [] CANO, knowing that an INVESTIGATION was IN PROGRESS, to-wit: AN INVESTIGATION INTO THE PHYSICAL ABUSE OF CHILDREN, did intentionally and knowingly conceal a THING, to-wit: A BASEBALL BAT, with intent to impair its verity, legibility, and availability as evidence in the INVESTIGATION.

At a hearing on her motion to dismiss on July 13, 2023, Cano argued that the State "originally did not give any notice of the tolling" and that the "statute of limitations has run on the six counts in the new indictment." The trial court denied Cano's motion to dismiss on July 13, 2023.

**B.    Standard of Review & Applicable Law**

On its face, an indictment must indicate that the prosecution is not barred by the applicable statute of limitations. TEX. CODE CRIM. PROC. ANN. art. 21.02(6). But "[t]he time during the pendency of an indictment . . . shall not be computed in the period of limitation." *Id.* art. § 12.05(b). "[N]ot just any indictment will toll the statute of limitations." *State v. West*, 632 S.W.3d 908, 911 (Tex. Crim. App. 2021). "[A] prior indictment tolls the statute of limitations . . . for a subsequent indictment [only] when both indictments allege the same conduct, same act, or same transaction." *Id.* (quoting *Hernandez v. State*, 127 S.W.3d 768, 774 (Tex. Crim. App. 2004)). On the other hand, "[a] subsequent indictment

7

is barred by the statute of limitations if it broadens or substantially amends the charges in the original indictment." *Id.* (quoting *Hernandez*, 127 S.W.3d at 773). This is because an indictment must give a defendant adequate notice to prepare a defense. *Id.* "Allowing the prior indictment to toll the statute of limitations would not defeat the purposes of the statute of limitations if the prior indictment gives adequate notice of the substance of the subsequent indictment." *Hernandez*, 127 S.W.3d at 772.

If the State wishes to rely on tolling under § 12.05(b), as here, it must plead "tolling facts" in the superseding "indictment itself, so that the indictment will indicate on its face that a prosecution thereunder is not barred by the applicable statute of limitations." *Tita v. State*, 267 S.W.3d 33, 37–38 (Tex. Crim. App. 2008); *see Ex parte Smith*, 178 S.W.3d 797, 803 (Tex. Crim. App. 2005) ("[I]f the State's pleading includes a 'tolling paragraph,' 'explanatory averments,' or even 'innuendo allegations,' this suffices to show that the charged offense is not, at least on the face of the indictment, barred by limitations.").

**C.    Discussion**

Cano concedes the amended superseding indictment contained tolling language. Cano makes two arguments as to why it nevertheless should have been dismissed. First, Cano argues that "the superseding indictment broadened and substantially amended the original charges" because "Count II added a completely new charge of aggravated assault on complainant" C.R. However, the trial court ordered a directed verdict on Count II. Thus, Cano was not convicted of Count II and cannot show any harm by the trial court.

Next, Cano argues that because Count III "changed the date from October 1, 2017[,] to October 14, 2017," it "broadened and substantially amended the original charge" because "[i]t appears that the State was addressing another act at a different time

8

period of time." However, "[i]t is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *West*, 632 S.W.3d at 913 (quoting *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997)). These dates merely put the defendant "on notice that he needs to prepare for proof" that the allegation "happened at any time within the relevant statutory period of limitations and not just for the date alleged." *Id.* "In order for a prior indictment to provide sufficient notice such that the defendant would preserve facts necessary to defending against the subsequent indictment, the two indictments must involve the same event." *Id.* at 912. That is, the "alleged conducts, acts, or transactions must be one and the same event." *Id.*

Here, the conduct alleged in Count III is the same in both the original and superseding indictments: that on or about October 1 (now 14) of October, Cano intentionally and knowingly used a bat and caused bodily injury to O.R. by striking her with a bat. Therefore, the original indictment provided "the type of clear notice necessary to identify and preserve the facts and witnesses essential to defend against the subsequent indictment." *Id.* at 914. In other words, Cano knew exactly what conduct she must defend herself against. *See id.* Therefore, we reject Cano's argument that the changed date in the amended indictment addresses a different act. *See id.*

Cano further complains that the added "language that the bat used was a deadly weapon . . . broadened and substantially amended the original charge." We disagree. Here, both indictments charged Cano with aggravated assault causing bodily injury, and both indictments tracked the language of the statute. *See* TEX. PENAL CODE ANN.

9

§ 22.02(a) (providing that a person commits an offense if the person commits assault and "causes serious bodily injury to another" or "uses or exhibits a deadly weapon during the commission of the assault"); *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) (providing that when an indictment tracks the language of the statute, it is "specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense").

Although the superseding indictment added language to Count III that the bat was a deadly weapon, the language in both indictments nonetheless tracks the language defining aggravated assault. *See* TEX. PENAL CODE. ANN. § 22.02 (a)(1). While the State may choose to include allegations in an indictment beyond what it must prove, nothing in § 22.02 requires the State to prove that Cano used a deadly weapon, such as a bat, to show that she is guilty of committing aggravated assault. *See id.*; *see also Latulas v. State*, No. 09-18-00313-CR, 2020 WL 2046160, at *2 (Tex. App.—Beaumont Apr. 29, 2020, pet. ref'd) (mem. op., not designated for publication). The State may prove aggravated assault under § 22.02 by proving that Cano intentionally and knowingly caused serious bodily injury to O.R., and both indictments allege just that. *See* TEX. PENAL CODE ANN. § 22.02; *see also Latulas*, 2020 WL 2046160, at *2 ("The amended indictment simply added the phrase a deadly weapon right after the last word in the original indictment. Both the original and amended indictment closely track the elements required to prove the crime of murder under [§] 19.02(b)(1)[.]").

Because the subsequent indictment necessarily charges the same act, conduct, or transaction as the first indictment, the statute of limitations was tolled during the period the original indictment was pending, and the trial court did not err when it denied Cano's

10

motion to dismiss on limitations grounds. We overrule Cano's third issue.

## V. SPEEDY TRIAL

By her last issue, Cano argues the trial court erred in denying her request, made in 2022, to dismiss the case for a failure to provide a speedy trial.

### A. Applicable Law

"The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a speedy trial to an accused." *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). The United States Supreme Court has listed four factors that courts should consider in addressing speedy-trial claims: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "If the defendant can make a threshold showing that the interval between accusation and trial is 'presumptively prejudicial,' then a court must consider each of the remaining *Barker* factors and weigh them." *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016) (quoting *State v. Munoz*, 991 S.W.2d 818, 821–22 (Tex. Crim. App. 1999)). "When reviewing the trial court's application of the *Barker* test, we give almost total deference to the trial court's historical findings of fact that the record supports, and we draw reasonable inferences from those facts necessary to support the trial court's findings." *Id.* at 767–68. "A reviewing court should not consider in its deliberations record evidence that was not before the trial court when it made its ruling." *Id.* at 768. "Review of the individual *Barker* factors necessarily involves fact determinations and legal

11

conclusions, but the balancing test as a whole is a purely legal question that we review *de novo.*" *Id.*

**B.     Discussion**

**1.     Length of Delay**

"We measure the delay from the time the defendant is formally accused or arrested to the time of trial." *State v. Lopez*, 631 S.W.3d 107, 114 (Tex. Crim. App. 2021). "Generally, a delay of eight months to a year, or longer, is presumptively prejudicial and triggers a speedy trial analysis." *Id.* Cano was arrested on October 15, 2017, and trial commenced on October 19, 2023. Thus, Cano met the threshold requirement to show presumptive prejudice from the delay of the trial, and we proceed to consider the remaining *Barker* factors.

**2.     Reasons for Delay**

At the pretrial hearing, the State argued that this case was extremely complicated with multiple defendants and child victims and very serious allegations. The State explained that Cano was indicted in 2019, and COVID delays and precautions commenced shortly after, prompting the entire courthouse to shut down. In an unpublished memorandum opinion, the Fourth Court of Appeals previously stated that "[w]hile the delays caused by the pandemic may weigh against the State, they do not weigh heavily." *Salazar v. State*, No. 04-22-00704-CR, 2023 WL 7553596, at *2 (Tex. App.—San Antonio Nov. 15, 2023, pet. ref'd) (mem. op., not designated for publication); *Diaz v. State*, No. 04-22-00526-CR, 2024 WL 590434, at *6 (Tex. App.—San Antonio Feb. 14, 2024, no pet.) (mem. op., not designated for publication) ("The State-induced resets, including those for discovery and the COVID pandemic, weigh slightly against the

12

State."). *But see State v. Conaster*, 645 S.W.3d 925, 930 (Tex. App.—Dallas 2022, no pet.) ("Delay caused by the onset of a pandemic cannot be attributed as fault to the State."). Here, the State filed one motion for continuance on the grounds that its witness was not available to testify because she had final exams. *See Barker*, 407 U.S. at 531 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay.").

Furthermore, Cano confirmed that she has been represented by at least four different attorneys throughout this case. "Delay caused by either the defendant or his counsel weighs against the defendant." *Balderas*, 517 S.W.3d at 768. Prior to the hearing, Cano's counsel sought to withdraw from representing her due to a lack of communication with Cano. *See id.* Furthermore, that at the most recent trial setting of July 17, the State announced it was ready, but Cano's counsel was on vacation.

### 3. Cano's Assertion

Five years after Cano was arrested, she filed a "Motion to Dismiss for Want of a Speedy Prosecution." "[F]iling for dismissal weakens a speedy-trial claim because it suggests a desire to have no trial instead of speedy one," and here Cano filed for a motion to dismiss rather than a motion for a speedy trial. *See Lopez*, 631 S.W.3d at 116; *Cantu v. State*, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008) ("Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one."). "[A] defendant's lack of a timely demand for a speedy trial 'indicates strongly that he did not really want a speedy trial,' and that he was not prejudiced by lack of one." *Velasco v. State*, 678 S.W.3d 258, 267 (Tex. App.—San Antonio 2023, no pet.) (quoting *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992)). Thus, "[t]he failure to timely assert a speedy trial claim 'makes it difficult for a

13

defendant to prove he was denied a speedy trial.'" *Huff v. State*, 467 S.W.3d 11, 30 (Tex. App.—San Antonio 2015, pet. ref'd) (citing *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)).

Moreover, Cano did not file a motion to dismiss until July 2023—almost six years after her arrest and four years after her indictment. The failure to timely assert a speedy trial claim "'makes it difficult for a defendant to prove he was denied a speedy trial.'" *Huff* 467 S.W.3d at 30 (quoting *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003) (opining that a three-and-one-half year delay by defendant in asserting speedy trial right weighed "very heavily" against a finding of a violation)). The absence of a timely demand for a speedy trial strongly suggests that Cano "did not really want a speedy trial and that [s]he was not prejudiced by the lack of one." *Id*. Her inaction weighs more heavily against a violation the longer the delay becomes, and here the delay was "quite extensive." *Id.* (finding a delay of two-and-a-half years after an arrest and indictment "quite extensive"). Accordingly, we find Cano's delay in asserting her right to a speedy trial weighs heavily against a finding a constitutional violation of her right to a speedy trial. *See id.*

### 4. Prejudice

Finally, we analyze the prejudice to Cano in light of the interests the right to speedy trial was designed to protect: (1) freedom from oppressive incarceration; (2) mitigation of anxiety and concern accompanying public accusation; and (3) avoidance of impairment to her defense. *Id.* At a pretrial hearing, Cano testified that she posted a $100,000 bond at the time of her arrest and reported to pretrial services regularly thereafter. Cano quickly made bond both times she was arrested, and she presented no evidence that it was

14

difficult for her to obtain bond.[3] *See id.*; *see also Diaz*, 2024 WL 590434, at *7 (finding that appellant was released on bond and therefore not able to show she was oppressively incarcerated). Thus, Cano was not oppressively incarcerated.

Cano stated she has not been able to vacation or travel out of town "for a long time," and some family and friends have held this matter against her, so she has chosen to "distance" herself from them as well. Cano presented no evidence that she suffered anxiety or concern over the accusation other than she chose to distance herself from some family and friends. *See Velasco,* 678 S.W.3d at 269 ("Velasco's evidence of emotional hardship was not legally exceptional."); *see also Cantu*, 253 S.W.3d at 286 ("[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation."); *see also Diaz*, 2024 WL 590434, at *7 ("Although anxiety can support a finding of prejudice, Diaz did not present sufficient evidence that the anxiety he felt went beyond the level normally associated with criminal charges."). Therefore, Cano did not show that she suffered prejudice in this regard.

More importantly, Cano did not allege or prove that the delay made her unable to prepare a defense. *See Balderas*, 517 S.W.3d at 772 ("The last interest is the most important because the fairness of the criminal-justice system is distorted when a defendant is unable to adequately prepare his defense.").[4] We conclude that Cano failed

---

[3] On cross-examination, Cano confirmed that prior to her arrest, she was self-employed completing taxes for other people working from her home and is still able to work.

[4] Instead, she testified that the harm she suffered included having to check in with pretrial services and not being able to travel or vacation for long periods of time. Cano did not show that any delay hampered her ability to put forward a defense. *See Velasco v. State*, 678 S.W.3d 258, 267 (Tex. App.—San Antonio

15

to identify any significant prejudice caused by the State's delay in bringing her to trial. *See Diaz*, 2024 WL 590434, at *7.

### 5. Summary

The fact that the delay was so long as to be presumptively prejudicial weighs in favor of finding a violation of Cano's speedy trial right. However, the record shows that Cano did not seek a speedy trial ruling until years after she was arrested, at which point she only sought an outright dismissal. *See Huff* 467 S.W.3d at 30; *see also Salazar*, 2023 WL 7553596, at *4. Significantly, Cano did not show that the delay hampered her ability to put forward a defense. *See id.* Accordingly, considering the four *Barker* factors, we conclude there was no violation of Cano's right to a speedy trial. We overrule her last issue.

## VI. CONCLUSION

We affirm the judgment of the trial court as modified.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
26th day of June, 2025.

---

2023, no pet.); *Salazar v. State*, No. 04-22-00704-CR, 2023 WL 7553596, at *4 (Tex. App.—San Antonio Nov. 15, 2023, pet. ref'd) ("Salazar also did not show that the delay hampered his ability to put forward a defense.") (mem. op., not designated for publication). "The right to a speedy trial is meant to mitigate or prevent oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the defense will be impaired." *Velasco*, 678 S.W.3d at 268. Cano did not provide evidence of any of the foregoing.